UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT LAWRENCE HOFNER,

                    Plaintiff,

    -vs-                          **No. 1:14-CV-00629 (MAT)**
                                    **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

---

## I.   Introduction

Represented by counsel, Robert Lawrence Hofner ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II.   Procedural History

The record reveals that in May 2011, plaintiff (d/o/b June 10, 1964) applied for DIB, alleging disability as of July 2009. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge Timothy J. Trost ("the ALJ") on November 6, 2012. The ALJ issued an unfavorable decision on March 8, 2013. The Appeals Council denied review of that decision and this timely action followed.

**III. The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since July 16, 2009, the alleged onset date. At step two, the ALJ found that plaintiff suffered from degenerative joint disease of the bilateral knees and obesity, impairments which the ALJ considered severe. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he should not squat and required the ability to stand once every hour to stretch. At step four, the ALJ found that plaintiff could not perform past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual

findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   Development of the Record

Plaintiff contends that the ALJ erred in determining his RFC without first obtaining a treating source opinion regarding his physical work-related limitations. After a review of the record, the Court disagrees. As the ALJ acknowledged in his decision, "no treating physician has offered an opinion as to functional limitations or [plaintiff's] disability status in general." T. 20. However, for the reasons discussed below, the record in this case was complete with no obvious gaps and therefore the ALJ did not have a duty to further develop the record.

The record in this case contains what appears to be a complete record of plaintiff's medical treatment. Records from his primary treating source, Lakeshore Family Medicine ("Lakeshore"), indicate that plaintiff's visits to that facility were for chiefly episodic complaints, including multiple reports of gouty flare-ups, as well as routine annual exams. The most recent treatment notes from Lakeshore indicate that plaintiff's conditions, which included hyptertension, gout, and substance abuse issues, were all well-controlled. The findings of plaintiff's most recent annual physical

examination, from April 2011, were completely normal and plaintiff denied any physical or mental symptoms at that visit.

Dr. David Bevilacqua examined plaintiff on one occasion, and noted that plaintiff had "severe arthritic knees" but stated that he "appear[ed] to be managing it at [that] time." T. 271. Dr. Bevilacqua recommended "conservative care, rest, heat, plain Tylenol, decreased weight, activity modification and quadriceps strengthening." Id. He also recommended that plaintiff return in one year for another consultation, but the record does not indicate that plaintiff did so.

Quite significantly, the record also contains a consulting internal medicine examination from Dr. John Shwab, which was performed at the request of the state agency in July 2011. Dr. Schwab noted a completely normal physical examination and opined that plaintiff had "mild-to-moderate restriction to kneeling, walking, and climbing stairs, due to his morbid obesity." T. 284. An X-ray performed in connection with Dr. Schwab's examination revealed mild degenerative joint disease in plaintiff's left knee. The ALJ gave Dr. Schwab's opinion significant weight.

"[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted). Plaintiff's attempts to analogize the Second

4

Circuit cases of <u>Tankisi v. Comm'r of Soc. Sec.</u>, 521 F. App'x 29 (2d Cir. 2013), and <u>Swiantek v. Comm'r of Soc. Sec.</u>, 588 F. App'x 82 (2d Cir. 2015), are unavailing. Both of those cases stand for the proposition that where a record is otherwise complete, an ALJ does not err by failing to request a treating source opinion. Most significantly, both of those cases, like this case, contained functional assessments from consulting state agency medical sources upon which the ALJs relied in formulating their respective RFC findings. Additionally, those cases, like this case, involved records which were apparently fully complete as to plaintiff's medical history.

Here, the ALJ's RFC finding restricting plaintiff to sedentary work was fully consistent with plaintiff's medical record and with Dr. Schwab's consulting opinion, upon which the ALJ properly relied. See <u>Petrie v. Astrue</u>, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.") (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam)). There is no indication from this record that there were any obvious gaps such that the ALJ's duty to further develop the record was triggered. See <u>Tankisi</u>, 521 F. App'x at 34 (holding record was complete where it contained functional assessments from consulting physicians as well as informal assessment from treating physician); <u>Swiantek</u>, 588 F. App'x at 84 (holding no reversible error where ALJ "based his findings on the psychiatric evaluation of a consultative psychologist who

5

personally examined [the plaintiff] as well as [the plaintiff's] complete medical history and treatment notes, which themselves contained multiple psychological assessments of [plaintiff].").

**B. Failure to Call Vocational Expert**

Plaintiff contends that the ALJ committed reversible error by failing to call a vocational expert ("VE") on the issue of whether plaintiff nonexertional limitations substantially eroded his occupational base, and instead relying solely on the Medical-Vocational Guidelines ("the grids") in determining that plaintiff was not disabled. As noted above, the ALJ found that plaintiff retained the RFC to perform sedentary work, but with the requirements that he avoid squatting and have the ability to stand once every hour to stretch.

Where a claimant's nonexertional limitations significantly diminish his ability to work beyond any incapacity caused solely from exertional limitations, and he is unable to perform the full range of employment under the grids, a VE must be consulted. See Bapp v. Bowen, 802 F.3d 601, 603 (2d Cir. 1986). However, "the mere existence of a nonexertional impairment does not automatically require the production of a [VE] nor preclude reliance on the guidelines." Id. at 602. To establish that reference to the grids is inadequate and that the use of a VE is mandatory, nonexertional impairments must "so narrow[] a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity." Id.

As the Commissioner correctly points out, the RFC's restriction regarding squatting would not significantly impact

plaintiff's ability to do sedentary work, as that category of work does not involve such an activity. See Soc. Sec. Ruling ("SSR") 83-14 (noting that sedentary work does not require an individual to crouch, defined as bending the body downward and forward by bending both the legs and spine). Additionally, the restriction regarding stretching would not significantly erode the base of sedentary work. SSR 83-14 provides guidance on this issue, noting that "[i]n cases of *unusual limitation of ability to sit or stand*, a [VE] should be consulted to clarify the implications for the occupational base." Id. (emphasis added). The need to stand up and stretch once per hour, as described in this RFC finding, is not an unusual limitation on the ability to sit or stand. Therefore, the Court finds no error with the ALJ's decision to rely on the grids.

**V. Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 7) is denied and the Commissioner's motion (Doc. 12) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          **S/Michael A. Telesca**
                                          HON. MICHAEL A. TELESCA
                                          United States District Judge

Dated:     February 29, 2016
            Rochester, New York.